## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| MOM CA Investco LLC, *et al.*,[1] | Case No. 25-10321 (BLS) |
| Debtors. | (Jointly Administered) |
| Mohammad Honarkar and 4G Wireless, Inc., | |
| Plaintiffs, | |
| v. | Adv. Pro. No. 25-_____ |
| MOM CA Investco LLC, MOM AS Investco LLC, MOM BS Investco LLC, Retreat at Laguna Villas, LLC, Sunset Cove Villas, LLC, Duplex at Sleepy Hollow, LLC, Cliff Drive Properties DE, LLC, 694 NCH Apartments, LLC, Heisler Laguna, LLC, Laguna Festival Center, LLC, 891 Laguna Canyon Road, LLC, 777 AT Laguna, LLC, Laguna Art District Complex, LLC, Tesoro Redlands DE, LLC, Aryabhata Group LLC, Hotel Laguna, LLC, 4110 West 3rd Street DE, LLC, 314 S. Harvard DE, LLC, Laguna HI, LLC, Laguna HW, LLC, The Masters Building, LLC, and 837 Park Avenue, LLC, | |
| Defendants. | |

---

[1]The Debtors in these chapter 11 proceedings, together with the last four digits of each Debtor's federal tax identification number, are: MOM CA Investco LLC [6263], MOM AS Investco LLC [6049], MOM BS Investco LLC [6180], Retreat at Laguna Villas, LLC [2046], Sunset Cove Villas, LLC [9178], Duplex at Sleepy Hollow, LLC [9237], Cliff Drive Properties DE, LLC [0893], 694 NCH Apartments, LLC [0318], Heisler Laguna, LLC [4709], Laguna Festival Center, LLC [4073], 891 Laguna Canyon Road, LLC [0647], 777 AT Laguna, LLC [8715], Laguna Art District Complex, LLC [8316], Tesoro Redlands DE, LLC [2764], Aryabhata Group LLC [7332], Hotel Laguna, LLC [9580], 4110 West 3rd Street DE, LLC [8641], 314 S. Harvard DE, LLC [2057], Laguna HI, LLC [6408], Laguna HW, LLC [9470], The Masters Building, LLC [6134], 837 Park Avenue, LLC [3229], and Terra Laguna Beach, Inc. [2344] (interim). The Debtors' headquarters are located at 520 Newport Center Drive, Suite 480, Newport Beach, CA 92660.

**COMPLAINT FOR DECLARATORY JUDGMENT, IMPOSITION OF
CONSTRUCTIVE TRUST, AND TURNOVER OF PROPERTY**

Mohammad Honarkar ("**Honarkar**") and 4G Wireless, Inc. ("**4G**" and together with Honarkar, the "**Honarkar Parties**" or "**Plaintiffs**"), by and through their undersigned counsel, hereby bring this adversary complaint (this "**Complaint**") for declaratory judgment, imposition of a constructive trust, and turnover of property against: (i) Defendants MOM CA Investco LLC, MOM AS Investco LLC, and MOM BS Investco LLC (collectively, the "**MOM JV Entities**"), and (ii) Defendants Retreat at Laguna Villas, LLC, Sunset Cove Villas, LLC, Duplex at Sleepy Hollow, LLC, Cliff Drive Properties DE, LLC, 694 NCH Apartments, LLC, Heisler Laguna, LLC, Laguna Festival Center, LLC, 891 Laguna Canyon Road, LLC, 777 AT Laguna, LLC, Laguna Art District Complex, LLC, Tesoro Redlands DE, LLC, Aryabhata Group LLC, Hotel Laguna, LLC, 4110 West 3rd Street DE, LLC, 314 S. Harvard DE, LLC, Laguna HI, LLC, Laguna HW, LLC, The Masters Building, LLC, and 837 Park Avenue, LLC. (collectively, the "**SPEs**" and together with the MOM JV Entities, "**Defendants**"),[2] and allege as follows:

**NATURE OF THE ACTION**

1.      By this action, Plaintiffs seek entry of a judgment declaring that (i) Defendants and their estates have no equitable or beneficial ownership interest in certain membership interests and real property currently held by Defendants, (ii) Defendants hold such interests and real property in trust for the benefit of Plaintiffs, and (iii) Defendants are obligated to immediately transfer any remaining legal title they may have to Plaintiffs.

2.      On June 8, 2021, the MOM JV Entities were created through a joint venture (the "**Joint Venture**") between and among Plaintiffs, on the one hand, and limited liability companies

---

[2] Collectively, the MOM JV Entities and the SPEs comprise the debtors and debtors-in-possession in the Chapter 11 Cases (the "**Debtors**").

created by Continuum Analytics, Inc. ("**Continuum**"), Mahender Makhijani ("**Makhijani**"), on the other hand.[3] As part of their contribution to the Joint Venture, Plaintiffs transferred to the newly-formed MOM JV Entities their membership interests in various limited liability companies, including nearly all of SPEs, each of which holds title to valuable commercial real estate.

3.     The Joint Venture was doomed from the start and in early 2023, Plaintiffs discovered that the Continuum Parties had committed numerous acts of fraud and misconduct against Plaintiffs, both before and after the Joint Venture was formed. Accordingly, Plaintiffs commenced an arbitration with JAMS on April 25, 2023 (the "**Arbitration**"),[4] asserting, among other things, claims for fraudulent inducement, breach of contract, and declaratory relief. Plaintiffs sought, *inter alia*, to rescind the transactions creating the Joint Venture, thus returning the membership interests in the SPE's to Plaintiffs.

4.     The Honorable David A. Thompson, a former Associate Justice with the California Court of Appeals, was designated as the arbitrator (the "**Arbitrator**"). The Arbitration included extensive written and oral discovery, pre- and post-hearing briefing, and culminated in a three-week-long evidentiary hearing held from June 24, 2024, through July 12, 2024, after which all parties confirmed there was no further evidence for consideration. The record in the Arbitration is now closed.

---

[3] As used herein, the term "**Continuum Parties**" shall refer, collectively, to Makhijani, Deba Shyam ("**Shyam**"), Jason Miller, Andrew Stupin, Bhajneet Singh Malik, Continuum, MOM CA Investor Group LLC ("**MOM CA Member**"), MOM AS Investor Group LLC ("**MOM AS Member**"), MOM BS Investor Group LLC ("**MOM BS Member**," and together with MOM CA Member and MOM AS Member, the "**MOM Members**"), MOM CA Manager LLC ("**MOM CA Manager**"), MOM AS Manager LLC ("**MOM AS Manager**"), and MOM BS Manager LLC ("**MOM BS Manager**," and together with MOM CA Manager and MOM AS Manager, the "**MOM Managers**").

[4] As used herein, the term "**Arbitration**" shall refer to the JAMS arbitration proceeding captioned as *Honarkar v. Makhijani*, No. 5220003126, as consolidated with the arbitration proceeding captioned as *MOM AS Investco LLC v. Honarkar*, No. 5200001122.

5.    The Arbitrator issued that certain *Partial Interim Award* entered in favor of Plaintiffs on February 21, 2025 in JAMS Arbitration No. 5220003126 (the "**Partial Interim Award**")[5], in which the Arbitrator found, among other things, that Makhijani, Continuum, and the MOM Members fraudulently induced Plaintiffs into signing the agreements for the Joint Venture and that the MOM Members and MOM Managers breached their obligations under the MOM JV Entities' operating agreements. The Partial Interim Award entitles Plaintiffs to elect either compensatory damages or rescission of the operating agreements and other Joint Venture agreements in addition to restitution and consequential damages, amongst other remedies. A true and correct copy of the Partial Interim Award is attached hereto as Exhibit 1.

6.    Just one week later, on February 28, 2025, the MOM JV Entities filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in this Court. On March 10, 2025, the SPEs filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in this Court, as well.

7.    On May 23, 2025, the Arbitrator issued the Partial Final Award (the "**Partial Final Award**"). The Partial Final Award incorporates the Partial Interim Award. As referenced in the Partial Final Award, the Arbitrator's Ruling on Motion for Attorney Fees and Costs (the "**Attorney Fee Ruling**") was filed contemporaneously with the Partial Final Award and entitles the Honarkar Parties' to recover their attorneys' fees and costs against the Respondents in the amount of $8,303,510.25 in attorney fees plus $893,916.06 in costs, for a total of $9,197,426.31. True and correct copies of the Partial Final Award and Attorney Fee Ruling are attached hereto as Exhibit 2 and Exhibit 3, respectively.

---

[5] Capitalized terms not defined in this Complaint have the meaning given to such terms in the Partial Interim Award, as defined herein.

8.      Under California law, Defendants do not currently have an equitable or beneficial ownership interest in the SPEs' membership interests or the real estate owned by the SPEs. Defendants hold such assets in trust for Plaintiffs' benefit.

9.      Accordingly, Defendants are entitled to the immediate turnover of the Investco Membership Interests and the Real Property (including any Sale Proceeds (as defined herein)), and Defendants must transfer any remaining legal title they may have to Plaintiffs.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2).

11.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

12.     The statutory predicates for the relief sought in this complaint are 11 U.S.C. §§ 105(a) and 541(d) of the Bankruptcy Code and Rule 7001 of the Federal Rules of Bankruptcy Procedure.

13.     Pursuant to Rule 7008-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, Plaintiffs consent to the entry of a final order or judgment by this Court in connection with this Complaint to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## PARTIES

14.     Plaintiff Mohammad Honarkar is an individual with his principal place of residence in Orange County, California.

15.     Plaintiff 4G Wireless, Inc. is a California corporation with a principal place of business located at 303 Broadway Street 104-155, Laguna Beach, CA, 92651. Honarkar wholly owns and controls 4G.

16.    Defendants MOM CA Investco LLC, MOM AS Investco LLC, MOM BS Investco LLC, Retreat at Laguna Villas, LLC, Sunset Cove Villas, LLC, Duplex at Sleepy Hollow, LLC, Cliff Drive Properties DE, LLC, 694 NCH Apartments, LLC, Heisler Laguna, LLC, Laguna Festival Center, LLC, 891 Laguna Canyon Road, LLC, 777 AT Laguna, LLC, Laguna Art District Complex, LLC, Tesoro Redlands DE, LLC, Aryabhata Group LLC, Hotel Laguna, LLC, 4110 West 3rd Street DE, LLC, 314 S. Harvard DE, LLC, Laguna HI, LLC, Laguna HW, LLC, The Masters Building, LLC, and 837 Park Avenue, LLC are Delaware limited liability companies with their principal place of business located at 520 Newport Center Drive, Suite 480, Newport Beach, CA 92660.

## FACTS COMMON TO ALL COUNTS

### A.    Honarkar builds his business and real estate portfolio.

17.    Honarkar moved to the United States from Iran in the mid 1980's and started a small cell phone business. That small business ultimately blossomed into 4G—a tremendously successful enterprise with 160 stores across five states. Although Honarkar sold the business assets of 4G to Verizon Wireless in January 2016, he retained his 100% ownership of 4G.

18.    Honarkar used the proceeds from the Verizon sale to invest in luxury commercial real estate across Laguna Beach, Palm Desert, and surrounding areas. These properties were purchased in both his individual name, and also through 4G, which held them through various special purpose limited liability companies.

### B.    The Honarkar Parties are fraudulently induced to join the Joint Venture.

#### a.    Honarkar's financial distress.

19.    While Honarkar enjoyed early success with his real estate pursuits, the 2020 COVID-19 pandemic severely affected the Honarkar Parties' operations and, ultimately, Honarkar's cash flow from the properties owned by 4G. At the same time, Honarkar was also

6

involved in a contentious divorce, which resulted in him entering into a stipulated judgment whereby he was required to pay his former wife $17.5 million by June 12, 2021.

20.     Further compounding these pressing financial issues, Honarkar also had a $195 million loan from LoanCore Capital ("**LoanCore**") secured by the majority of Honarkar's real estate assets (the "**LoanCore Loan**") coming due, which Honarkar had also personally guaranteed. Unfortunately, Honarkar was not able to make a required balloon payment under the loan, which went into default. *See id.* at 5-6.

21.     In January 2021, at the request of Honarkar's wife, Douglas Wilson was appointed received over the properties that secured the LoanCore Loan. Shortly thereafter, DIG PFSS LBCP Holding Company LLC purchased the LoanCore Loan and took swift action to foreclose on the properties, with foreclosures scheduled to commence on June 15, 2021.

>     **b.**     **Honarkar's search for funding leads him to Makhijani and Continuum.**

22.     With foreclosures looming and a $17.5 million payment due in June 2021 to his former wife, Honarkar began searching for potential financing and investment opportunities that could provide him with urgently-needed cash at a time of both global and personal financial distress.

23.     One of the funding sources he considered was Nano Banc ("**Nano**"), one of Honarkar's previous lenders. Through this lending relationship, Honarkar was familiar with Nano's then-Chief Credit Officer, Anthony Gressak ("**Gressak**"). Gressak introduced Honarkar to Makhijani and Continuum, each of whom have deep ties to Nano.

24.     On May 19, 2021, Nano provided Honarkar with a letter of intent for a $150 million loan to pay off the LoanCore Loan. But while Nano, though Gressak, was leading Honarkar to believe that funding was imminent, the reality at the bank was much different. Indeed, Daniel F. Patrick, Nano's Person Most Knowledgeable witness in the Arbitration, tested that $150 million

was "well beyond the bank's legal lending limit for a single loan" and that Nano "never would have approved Mr. Honarkar for a $150 million loan[.]"

25.     At the same time he was negotiating a potential loan from Nano, Honarkar was also discussing the potential Joint Venture terms with Makhijani and Continuum. Notably, on May 20, 2021, just **one day** after it provided Honarkar with the letter of intent for the (illusory) $150 million loan, Nano provided Shyam with a letter of intent for a $20 million loan (the "**Nano Loan**") to be made to the MOM JV Entities and secured by (i) an assignment of membership interests in 689 South Coast Hwy LLC, Laguna HI LLC, and the Masters Building LLC and (ii) deeds of trust encumbering properties held by these limited liability companies. *At the time the letter of intent for the Nano Loan was conveyed to Shyam, the properties were wholly owned by the Honarkar Parties, the MOM JV Entities did not exist, and there was no binding agreement in place between the Honarkar Parties and the Continuum Parties to even form the MOM JV Entities.*

26.     On May 24, 2021, and with time running down until the foreclosures began and his former wife's settlement payment came due, the Honarkar Parties and Continuum entered into a term sheet to form the Joint Venture. The term sheet contemplated that the Honarkar Parties would contribute their interests in the subsidiary limited liability companies that held some, but not all, of their real estate portfolio, and Continuum would provide an initial capital contribution of $35 million of "cash equity," half of which was always intended to be used to pay off Honarkar's wife. Continuum was also obligated to secure refinancing to pay off the balance of the LoanCore Loan, which was then estimated to be approximately $140 million. Because the term sheet was binding only on Honarkar, he was locked into the Joint Venture, but Continuum was free to pursue other options.

### c. Continuum exerts maximum pressure to obtain Mr. Honarkar's signature on the rushed joint venture agreements.

27.     With time continuing to dwindle, Honarkar's counsel offered to provide initial operating agreements for the MOM JV Entities. Continuum refused and instead directed its attorneys to take control of the documents. Incredibly, although Makhijani and Continuum were aware of Honarkar's immense time pressure, they elected not to share the draft operating agreements with Honarkar when they were ready. Instead, on May 28, 2021, they circulated the operating agreements to one of the banks they were considering using to refinance the LoanCore Loan. Honarkar and his counsel did not receive them until almost a week later on June 2, 2021— less than two weeks before the foreclosures were to commence and ten days before the $17.5 million payment to Honarkar's wife was due.

28.     The Arbitrator observed that "[e]veryone agrees the JV document negotiation and drafting process was chaotic and frantic," and that Continuum, through its employee Michael Klutchin, pressured Honarkar into providing signature pages before the documents were even finalized. Throughout the negotiation process, Honarkar repeatedly had to confirm whether his comments to the documents had been accepted and incorporated—or whether he had even been solicited for comment at all.

29.     Predictably, this frenzied negotiation process caused additional delay that Honarkar could not afford given his impending financial cliff. Ultimately, Continuum was not able to secure sufficient financing to refinance the LoanCore Loan and, at the suggestion of Makhijani, Continuum reduced its initial contribution to $30 million to "close the gap"—despite Continuum's prior commitment of a $35 million initial contribution under the term sheet. This change resulted in Honarkar being unable to satisfy his settlement obligation to his former wife, which caused him to forfeit his former residence.

30.     The lead up to closing on the Joint Venture agreements was just as chaotic as the rest of negotiations, with last-minute blanks in documents and missing exhibits. Most critically, Exhibit C to the operating agreements—which was to contain the list of limited liabilities that Honarkar would contribute to the Joint Venture—was not even circulated to Honarkar and his counsel until 11:00 p.m. on the night before the Joint Venture was to be formed and the LoanCore refinancing was to occur. And even at that later hour, the list was grossly inaccurate. Instead of just listing the entities that Honarkar would contribute to the Joint Venture, Makhijani populated Exhibit C with a comprehensive list of **all** of the Honarkar Parties' entities. Strictly read, this would suggest (incorrectly) that each and every one of Honarkar's business interests would be transferred to the Joint Venture.

31.     Nevertheless, the MOM JV Entities were formed on June 8, 2021. *See id.* at 9.

**C.     Defendants' Post-Joint Venture Corporate Structure.**

32.     Following the Joint Venture, Plaintiffs held (and continue to hold) 50% of the membership interests in each of the MOM JV Entities. *See* Ex. 4 (Spindler Report) at 2, 19. The remaining 50% membership interest in MOM CA Investco LLC is held by MOM CA Member, which is 100% owned by Shyam. The remaining 50% membership interest in MOM AS Investco LLC is held by MOM AS Member, which is 100% owned by Andrew Stupin. The remaining 50% membership interest in MOM BS Investco LLC is held by MOM BS Member, which is 100% owned by Bahjneet Singh Malik.

33.     The MOM JV Entities hold all of the membership interests in the SPEs, which, in turn, hold title to various real properties (collectively, the "**Real Property**") located in California. *See* Ex. 1 (Partial Interim Award) at 3-11.

34.     Upon information and belief, MOM AS Investco LLC holds the membership interests in the following SPEs: (1) Retreat at Laguna Villas, LLC; (2) Sunset Cove Villas LLC;

(3) Duplex at Sleepy Hollow, LLC; (4) Cliff Drive Properties DE, LLC; (5) 694 NCH Apartments LLC; and (6) Heisler Laguna LLC (collectively, the "**MOM AS Membership Interests**"). *See* Ex. 4 (Spindler Report) at 9.

35.    Upon information and belief, MOM BS Investco LLC holds the membership interests in the following SPEs: (1) 891 Laguna Canyon Road, LLC; (2) 777 At Laguna, LLC; (3) Laguna Art District Complex, LLC; and (4) Laguna Festival Center, LLC (collectively, the "**MOM BS Membership Interests**"). *See id.*

36.    Upon information and belief, MOM CA Investco LLC holds the membership interests in the following SPEs: (1) The Masters Building, LLC; (2) 689 S. Coast Hwy, LLC; (3) 837 Park Ave, LLC; (4) Laguna HI, LLC; (5) Laguna HW, LLC; (6) 314 S. Harvard DE, LLC; (7) 4110 W. 3rd St. DE, LLC; (8) Tesoro Redlands, LLC; (9) Cliff Village, LLC; (10) Hotel Laguna, LLC; (11) Tustin Retail Properties, LLC; (12) Aryabhata Group, LLC (collectively, the "**MOM CA Membership Interests**", and together with the MOM AS Membership Interests and the MOM BS Membership Interests, the "**Investco Membership Interests**"). *See id.*

37.    The chart below lists the Real Property and their corresponding SPEs, to the best of Plaintiffs' knowledge. Because the Continuum Parties have denied Plaintiffs access to the MOM JV Entities' books and records for years, Plaintiffs do not currently have a full, up-to-date list of all the MOM JV Entities' subsidiaries.

| MOM Debtor | SPE | Real Property Address(es) |
|---|---|---|
| MOM AS Investco LLC | Retreat at Laguna Villas, LLC | 749 Gaviota (729 Ocean Front) |
| | Sunset Cove Villas, LLC | 683 Sleepy Hollow Ln, Laguna Beach |
| | Duplex at Sleepy Hollow, LLC | 689 Sleepy Hollow Ln, Laguna Beach |
| | Cliff Drive Properties DE, LLC | 150-154 Cliff Dr, Laguna Beach |

|  | Aryabhata Group, LLC | 4251,4225,4253 Martingale Way; 1701 Corinthian Way; 4200,4220,4250 Scott Drive; 1660 Dove Street, Newport Beach |
|  | 694 NCH Apartments, LLC | 694 N Coast Hwy, Laguna Beach |
|  | Heisler Laguna, LLC | 305-397 North Coast Highway, Laguna Beach |
| MOM BS Investco LLC | Laguna Festival Center, LLC | 805-859 Laguna Canyon Rd, Laguna Beach |
|  | 891 Laguna Canyon Road, LLC | 891 Laguna Canyon Rd, Laguna Beach |
|  | 777 at Laguna, LLC | 777 Laguna Canyon Rd, Laguna Beach |
|  | Laguna Art District Complex, LLC | 775-793 Laguna Canyon Rd, Laguna Beach |
| MOM CA Investco LLC | The Masters Building, LLC | 2711 Pacific Coast Hwy (2713 w Coast Hwy), Corona Del Mar |
|  | Laguna HI, LLC | 696 S Coast Hwy, Laguna Beach |
|  | Laguna HW, LLC | 688-690 S Coast Hwy, Laguna Beach |
|  | 314 S. Harvard DE, LLC | 314 Harvard Blvd, Los Angeles |
|  | 4110 West 3rd Street DE, LLC | 4110 West 3rd Street, Los Angeles |
|  | 837 Park Ave, LLC | 837 Park Ave, Laguna Beach |
|  | Tesoro Redlands DE, LLC | 106 W Pennsylvania Ave, Redlands |
|  | Hotel Laguna, LLC | 421 S Coast Hwy, Laguna Beach |

**D.    Honarkar discovers the fraudulent and invalid Nano Loan and the Continuum Parties retaliate.**

38.    Not surprisingly, the relationship between the Honarkar Parties and the Continuum Parties remained strained, and by early 2023, Honarkar was evaluating his options to exit the Joint Venture. While sourcing alternative financing, Honarkar discovered for the first time a deed of trust dated as of June 7, 2021 and securing the Nano Loan and encumbering one of the MOM JV Entities' properties. With that knowledge, he ran title searches on the MOM JV Entities' other

12

properties and discovered, again for the first time, the assignments of the MOM JV Entities' membership interests in 689 South Coast Hwy LLC, Laguna HI LLC, and The Masters Building LLC, as well as other previously undisclosed deeds of trusts, loans, and other transactions encumbering and involving certain of the other SPEs and properties. Honarkar's searching also uncovered the fact that the $30 million initial contribution from the Continuum Parties (which had already been reduced from the agreed-upon $35 million in the term sheet) had been funded in large part by the Nano Loan taken out by the MOM JV Entities themselves—before they were even formed and before Honarkar contributed any properties thereto.

39.    Promptly upon discovering the Nano Loan and other issues, Honarkar sent a letter to Makhijani and Continuum raising his concerns. This letter went unanswered.

40.    After his inquiry was ignored, Honarkar, through his counsel, sent a formal books and records demand to the MOM JV Entities on March 22, 2023. On April 3, 2023, the Continuum Parties indicated that they would provide documentation relating to the Nano Loan—but only if Honarkar withdrew his inspection demands. Honarkar declined, and instead filed a petition in Los Angeles Superior Court to access those books and records.[6]

41.    Honarkar's books and records demand marked a turning point in his relationship with the Continuum Parties. On March 29, 2023, the Continuum Parties utilized their power as Managing Managers under the MOM JV Entities' operating agreements to purport to terminate Honarkar as Administrative Manager of the Joint Venture. But they did not stop there.

42.    Two days later, a group of armed individuals working at the behest of the Continuum Parties entered and took control of numerous properties owned by the MOM JV

---

[6] That request was granted over the Continuum Parties' objection on November 9, 2023.

Entities, including the Hotel Laguna, a Holiday Inn Hotel in Laguna Beach, and several other vacation rentals.

43.     Then they confronted Honarkar again at the Hotel Laguna in May 2023, which resulted in the assault arrest of an agent of the Continuum Parties. But the Continuum Parties were still not done with their scorched-Earth crusade against Honarkar. During the night of June 30, 2023 and morning of July 1, 2023, the Continuum Parties dispatched their armed agents—again— to take physical control of another restaurant operated by Honarkar.

44.     Later in July 2023, during a time at which Honarkar and certain of the Continuum Parties were at a scheduled court hearing, the Continuum Parties arranged for more than one dozen men in black to break through 4G's corporate headquarters' glass doors with a hammer and remove physical documents marked "LEGAL," computers, and other property from the building.

### E.     The Arbitration and the Partial Awards

45.     On April 25, 2023, Plaintiffs filed their original Demand and Statement of Claim commencing the Arbitration with JAMS, seeking the rescission of the MOM JV Entities' operating agreements or, alternatively, the appointment of a receiver over the MOM JV Entities, compensatory and punitive damages, declaratory judgment, and an injunction reinstating Honarkar as the administrative manager. *See id.* at 14.

46.     In the Arbitration, Plaintiffs asserted claims against Makhijani, Continuum, the MOM Members, and the MOM Managers for fraudulent inducement, breach of contract, and direct forcible entry and forcible detainer, as well as claims against Nano for conspiracy to commit and aiding and abetting fraudulent inducement. *See id.* at 3. Plaintiffs sought, *inter alia*, the rescission of the agreements creating the MOM JV entities, an accounting of the MOM JV Entities' books and records by an independent third party, and declaratory relief as to the parties' respective rights, duties, powers, and obligations under the MOM JV Entities' operating agreements. *See id.* at 41.

14

47.     The Continuum Parties—including the Debtors themselves—commenced their own arbitration against Mr. Honarkar alleging claims for among other things, trespass, conversion, and intentional interference with contractual relations. This arbitration was consolidated with the Arbitration, and the Continuum Parties' claims were addressed (and denied) in the Arbitration as counterclaims against Honarkar. *See id.* at 44.

48.     The Arbitration culminated in a three-week-long evidentiary hearing held from June 24, 2024, through July 12, 2024. *See id.* at 44. The Arbitrator found that, throughout the course of the Arbitration, the Continuum Parties and their witnesses repeatedly presented false evidence and testimony. *See id.* at 17-20.

49.     On February 21, 2025, the Arbitrator issued the Partial Interim Award. *See id.* at 3.

50.     The Arbitrator found that Plaintiffs proved that Makhijani, Continuum, and the MOM Members had fraudulently induced Plaintiffs into signing the agreements for the Joint Venture, and that the MOM Members and the MOM Managers breached their obligations under the MOM JV Entities' operating agreements. *See id.* at 16-26, 27-30, 47.

51.     The Arbitrator further found that the Continuum Parties proved <u>none</u> of their claims against Mr. Honarkar. *See id.* at 44.

52.     Accordingly, the Arbitrator determined that Plaintiffs are entitled to elect the alternative remedies of either compensatory damages or rescission of the Joint Venture agreements in addition to restitution and consequential damages. The Arbitrator further determined that Plaintiffs were entitled to declaratory relief and the accounting[7] that they had requested. *See id.* at 44-46.

---

[7] The Debtors have indicated that they are negotiating a protocol for the accounting to be conducted, but to date the accounting has not yet commenced and the protocol has not been discussed in several weeks.

53.     One week after the Partial Interim Award, Defendants filed for Chapter 11 bankruptcy on behalf of Terra Laguna Beach, Inc. ("**Terra**")—one of the entities at issue on Plaintiffs' declaratory relief claim, on which Plaintiffs prevailed.  In so doing, Defendants took the position that the Award had not determined that Terra and the other entities were never transferred to the MOM JV's.   Defendants took this position notwithstanding the fact that, in the Partial Interim Award, the Arbitrator characterized Plaintiffs' declaratory relief claim as seeking, *inter alia*, an Order that various entities, including Terra, "were never intended by the parties to be Contributed Entities to the JV…."  *See* Ex. 1 (Partial Interim Award) at 43.

54.     Because of Defendants' position, Plaintiffs were compelled to seek clarification from the Arbitrator on his ruling on the declaratory relief claim.  On May 12, 2025, the Arbitrator granted Plaintiffs' request for clarification, stating expressly that "the Declaratory Relief Entities (including Terra Laguna Beach, Inc.) are not now and never have been owned by the MOM JV Entities." *See* Ex. 5 (5/12/25 Order) at 2.[8]

55.     On May 23, 2025, the Arbitrator issued the Attorney Fee Ruling, granting Plaintiffs' post-hearing Motion for Attorneys' Fees and Costs.  In so doing, the Arbitrator ordered that Plaintiffs were entitled to recover from Defendants $8,303,510.25 in attorney fees plus $893,916.06 in costs, for a total of $9,197,426.31. *See* Ex. 3 (Att'y Fee Ruling) at 12.

56.     Most importantly, on May 23, 2025, the Arbitrator issued the Partial Final Award. The Partial Final Award is identical to the March 2025 Award, except that it also includes the Arbitrator's decision on Plaintiffs' motion for attorneys' fees and costs.  As set forth expressly in the Partial Final Award, the Award is to "be considered final, for purposes of a judicial proceeding to enforce, modify or vacate…" *See* Ex. 2 (Partial Final Award) at 46.

---

[8] The Arbitrator's May 12, 2025 Order is attached hereto as Ex. 5.

57.    Plaintiffs intend to continue to pursue their rights and remedies for their now-proven claims against the Continuum Parties.

## COUNT I
### (Declaratory Judgment Under 11 U.S.C. § 541(d) Against the MOM JV Entities)

58.    Plaintiffs incorporate all preceding allegations as if set forth fully herein.

59.    Section 541(d) of the Bankruptcy Code provides, in relevant part, as follows:

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a)(1) or (2) of this section *only to the extent* of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

11 U.S.C. § 541(d) (emphasis added).

60.    Applicable state law determines a debtor's interest in property.

61.    As alleged above, under California law, the MOM JV Entities do not hold any equitable or beneficial ownership interest in the Investco Membership Interests because such interests were procured by fraud perpetrated against the Honarkar Parties.

62.    The Investco Membership Interests are the property of the Honarkar Parties and are not property of the Debtors' estates.

## COUNT II
### (Declaratory Judgment Under 11 U.S.C. § 541(d) Against the SPEs)

63.    Plaintiffs incorporate all preceding allegations as if set forth fully herein.

64.    Plaintiffs were fraudulently induced into transferring the Investco Membership Interests in the SPEs, which SPEs held title to the underlying Real Property, to the MOM JV Entities.

17

65.     The SPEs held bare legal title to the Real Property prior to the filing of the Chapter 11 Cases, and held those interests in trust for Plaintiffs because of the fraud committed by the Continuum Parties.

66.     The Real Peal Property is the property of the Honarkar Parties, and is not property of the Debtors' estates.

<u>**COUNT III**</u>
**(Imposition of a Constructive Trust and Turnover of Any Sale Proceeds)**

67.     Plaintiffs incorporate all preceding allegations as if set forth fully herein.

68.     Plaintiffs seek the imposition of a constructive trust upon the Investco Membership Interests and the Real Property currently held by the MOM JV Entities and the SPEs, respectively, for the benefit of Plaintiffs.

69.     Federal and California State Courts will impose a constructive trust against a party that has engaged in inequitable conduct, such as fraud, or where holder of the legal title may not in good conscience retain the beneficial interest therein.

70.     The principal circumstances where constructive trusts are imposed are set forth in California Civil Code Sections 2223 and 2224. Section 2223 provides that "[o]ne who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner." Section 2224 states that "[o]ne who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it."

71.     "A constructive trust is an involuntary equitable trust created by operation of law as a remedy to compel the transfer of property from the person wrongfully holding it to the rightful owner. The essence of the theory of constructive trust is to prevent unjust enrichment and to

prevent a person from taking advantage of his or her own wrongdoing." *Communist Party of U.S. v. 522 Valencia, Inc.*, 35 Cal.App.4th 980, 990 (Cal. Ct. App. 1995) (internal citations omitted).

72.     A party seeking imposition of a constructive trust must show (1) the existence of a *res* (property or some other interest in property), (2) the right to that *res*, and (3) the wrongful acquisition or detention of the *res* by another party who is not entitled to it. *Mattel, Inc. v. MGA Entertainment, Inc.* (citing *Communist Party of U.S.*, 35 Cal.App.4th at 990).

73.     In the Partial Interim Award, the Arbitrator found that Plaintiffs proved that Makhijani, Continuum, and the MOM Members had fraudulently induced Plaintiffs into signing the agreements for the Joint Venture, and that the MOM Members and the MOM Managers breached their obligations under the MOM JV Entities' operating agreements; accordingly, the Arbitrator determined that Plaintiffs are entitled to elect the alternative remedies of either compensatory damages or rescission of the Joint Venture agreements in addition to restitution and consequential damages, as well as the declaratory relief and accounting that they had requested, and attorneys' fees and costs. Under California Civil Code Section 2224 "[o]ne who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it."

74.     The Plaintiffs have sought relief from the bankruptcy stay in order to have the Partial Interim Award confirmed by the California Court.

75.     In the event the Debtors sell any portion of the Real Property, the Honarkar Parties are entitled to any such sale proceeds and, after payment of all allowed secured claims related to such Real Property, such sale proceeds shall be held in trust for the benefit of whomever is

ultimately deemed to be the 100% owner of the Debtors after conclusion of the accounting and election of remedies in the Arbitration (the "**Sale Proceeds**").

76.     The Honarkar Parties are thus entitled to the immediate imposition of a constructive trust on the Investco Membership Interests and the Real Property currently held by the MOM JV Entities and the SPEs, and the turnover of same (as well as the turnover of any Sale Proceeds).

<u>**COUNT IV**</u>
**(Turnover of Property Against all Defendants)**

77.     Plaintiffs incorporate all preceding allegations as if set forth fully herein.

78.     Defendants are obligated to immediately transfer any remaining legal title they possess in the Investco Membership Interests and/or the Real Property to Plaintiffs, and to turn over any Sale Proceeds.

**WHEREFORE**, Plaintiffs respectfully request that the Court award the following relief:

a.     Entry of a declaratory judgment stating that under §541(d) of the Bankruptcy Code and applicable California state law: (i) the MOM JV Entities' estates do not have an equitable or beneficial ownership interest in the Investco Membership Interests; (ii) the SPEs' estates do not have an equitable or beneficial ownership interest in the Real Property, (iii) that the Investco Membership Interests and the Real Property are not property of the Debtors' estates, and (iv) that the Investco Membership Interests and the Real Property are property of the Honarkar Parties;

b.     Entry of an order imposing a constructive trust upon the Investco Membership Interests and the Real Property (including any Sale Proceeds) currently held by the MOM JV Entities and the SPEs, respectively, for the benefit of Plaintiffs, and the immediate turnover of same;

102857361.13

   c. Entry of an order requiring the MOM JV Entities and SPEs to immediately transfer any remaining legal title they possess in the Investco Membership Interests and the Real Property to Plaintiffs; and

   d. Such other and further relief as the Court deems just and proper.

Dated: May 27, 2025    **POLSINELLI PC**
Wilmington, Delaware

   _/s/ Christopher A. Ward_
   Christopher A. Ward (Del. Bar No. 3877)
   Shanti M. Katona (Del. Bar No. 5352)
   Stephen A. Smith (Del. Bar No. 7456)
   222 Delaware Avenue, Suite 1101
   Wilmington, Delaware 19801
   Telephone: (302) 252-0920
   Facsimile: (302) 252-0921
   cward@polsinelli.com
   skatona@polsinelli.com
   sasmith@polsinelli.com

   -and-

   Elisa Hyder
   Three Logan Square
   1717 Arch Street, Suite 2800
   Philadelphia, PA 19103
   Telephone: (215) 267-3001
   Facsimile: (215) 267-3002
   ehyder@polsinelli.com

   -and-

   James P. Martin
   7676 Forsyth Blvd., Suite 800
   St. Louis, MO 63105
   Telephone: (314) 889-8000
   Facsimile: (314) 231-1776
   jmartin@polsinelli.com

   _Counsel to Mr. Honarkar and 4G Wireless, Inc._

102857361.13